I was curious, why did it take so long? Thank you.  Mr. Lallier. I'm sorry, I probably mispronounced that. I'm going to go with Lallier. Good morning, Your Honors. Cameron Lallier, attorney for Citizens State Bank Norwood Young America, the appellant in this case. May it please the Court. This case has been well-briefed by both sides, so I hope to be brief here today. The case begins, like every case does, with the filing of a petition and schedules, sometimes the same day some day, sometimes within a few weeks after the filing of the petition. Those schedules are the debtor's representation of the assets and liabilities of the debtor, and they are signed under oath and submitted under oath and constitute an admission by the debtor. In this case, the debtor scheduled the claim of Citizens State Bank. It's important to note, from the bank's perspective, that this is not the type of case where the debtor threw out its best guess of what amount was owed. It was very, very specific. Specifically, he scheduled the claim in the amount of $869,798.01. I've very rarely seen an estimate down to the exact penny before, especially with such accuracy. Similarly, the secured claim is not given in a round figure. It's given at $566,552. And correspondingly, the unsecured portion of the claim is very specific as well. From that point, a mere four days later, the bank filed an objection to a first-day motion to incur secured debt. In its objection, the bank included itemized by loan the original principal amount of the eight loans that led to that total amount of debt. And it provided additional details on the lending relationship between the debtor and the bank. It identified the specific collateral that secured those loans. It identified that all obligations were cross-collateralized under the lending agreements, and so on. And that is the basis of the informal proof of claim, yes? Yes. So did the informal proof of claim even hint at an unsecured portion? I believe it did, Your Honor. The dip objection, as I've referred to it in the briefing, very specifically referenced the amounts as set forth in the debtor schedule, but there is a reference that the bank's unsecured claim is $303,246.01. I'm sorry. You're saying that was in the objection to the financing? Can you point me to where that statement was made? I can. That would be... I will tell you, I did not find any reference to an unsecured claim in the objection to the debt financing. This is where you need your paralegal. Yes. I believe, and I don't have the actual document before me, but I have the citation in my brief. That would have been at Bankruptcy Court Docket ECF-13, which is the objection filed by Citizen State Bank at page 3. Again, it provides a paragraph that recites from debtor schedule D, line 2.1, the amount of the total secured claim that $566,552 was secured by collateral and $303,246.01 represented the unsecured portion of the bank's claim. And I don't think it did say that is my problem. What it did say, and this is one of the questions I wanted to put to you, it does state unambiguously that the bank was entitled to interest fees, charges, and attorney's fees, costs, and expenses, which would only be true if the bank were oversecured, correct? Sure. It does include a request for those amounts, and that would be true. Of course, early on in that case, the bank wasn't interested in waiving its rights to that to the extent collateral came out in its favor. But I think from the outset, every party in this case knew that ultimately this was going to be a bifurcated claim under Section 506. So it was included in there in that day four objection, so as to not waive the issue if the collateral somehow was far greater than anybody thought. But I think, as I said, I believe it's in there. I don't have Docket 13 in front of me, so I'll have to go back and review it. The document will say what the document says. It's my recollection it does not say that. And my recollection is that it does claim to be an oversecured claim. So I'm not sure how someone reviewing that document would necessarily conclude there was an unsecured claim. So that was my only question regarding that. So then Judge Ridgway conducted a hearing on confirmation end of January, January 26th of this year. Your very first sentence or two to us this morning referred to the debtor's schedules. Does that imply your 1111A argument? I'm not sure I follow the question entirely. The basis for the 1111A argument is derived from the debtor's schedules. I don't have a lot to add to my briefing on the statutory. Why didn't you mention 103G, which seems to say just the opposite, that it is not applicable to a Chapter 12 case? Let me help you out, because 103G says that the provisions of Title 11 apply only, the provisions of subchapters 1 and 2 apply only in a Chapter 11 case. The 1111 is part of subchapter 2. It's, as you say a couple of times regarding your statutory interpretation arguments, the plain language of the law controls. And the plain language of Section 103G says your argument doesn't fly. Yes. 103G says what 103G says. Again, I don't have a lot to add to my briefing on the statutory argument. I'll concede before this Court that that's probably the weakest of the arguments posited by the bank in this appeal. I do believe there is additional support. When you read 1111A, it says what it says. Again, no prohibition against its application in 12, no limitation of its application to 103G. But 103G says it does, it only applies in Chapter 11 cases. I'm also concerned by the fact that when you quoted Section 103 in your brief, you excised paragraph G. You cited other provisions as part of your statutory analysis, but you omitted the very part of 103 that renders your argument pointless. I apologize for that. It was oversight. I'll leave it at that, Your Honor. Well, let's go to something softer, such as the confirmation hearing. Why didn't the bank raise its hand and say, we want a hearing? I guess I'll fall on the sword for that one, in that it's been my practice in every instance that where you come in, again, our objection to the now talking about our objection to plan confirmation, it's a verified pleading, verified by a representative of the bank, attaching a third party appraisal that clearly delineates a valuation dispute to the tune of $57,000. My practice has always been that those matters are routinely set for an evidentiary hearing. I thought that's where we're going. I should have requested it. We don't know the local custom. Well, another question following up on that one, does the court routinely take evidence in a telephonic hearing? Not routinely, but during COVID precautions, there have been telephonic evidentiary hearings conducted. I don't know if Judge Ridgway conducted any, but I have participated in a couple. Well, Mike, in anything leading up to the hearing, was there any suggestion that it was going to be an evidentiary hearing? Not from the court. That hearing, again, custom practice is that first hearings are preliminary hearings, and unless the matter can be decided as a matter of law, thereby obviating the need for an evidentiary hearing, they are set for an evidentiary hearing at a later time. Turning to the evidentiary hearing and what occurred and what the bank objects to at this point in this appeal, we've touched on the valuation issue. Again, the dispute is $57,000. That debtor's number is 306690. That's the amount in the plan. It's the amount found by Judge Ridgway in the confirmation order. The bank's valuation of that same collateral is $363,900, thereby being the $57,000. Interestingly, the briefing in this case says the bank was here on valuation and the bank was here on valuation and they were all over the board. I think if this court goes back and reviews the filings of the bank, the bank consistently asserted the value was $363,900. The references to other amounts, one arose in connection with the 1225A-5B issue. Did the plan propose to pay the bank its allowed secured claim? Again, that uses the debtor's valuation, and the argument is that even using the debtor's valuation, the plan fails to provide $3,431.31 of the bank's secured claim. That's if you assume debtor was successful in establishing its value, we'd have a $3,000 issue. But when you tack on the $57,000 difference, we have a $60,000 issue. We think that it was error to determine the value when you had appraisal submitted by the bank and the only evidence to the contrary. Again, no evidence was taken, but you had the debtor's assertion that the amount was something less than what the appraisal was. Again, we never got into contested hearings as to why the debtor believes the appraisal conducted in 2019 wasn't accurate as to any specific piece of equipment. Did the bank file a proof of claim after briefing started? Yes, they did. What's the effect of that? Well, it's certainly an untimely proof of claim. The relevant provisions of the code permit untimely proof of claims. I think that's important only in the issue of a lot of the arguments here are allowance or disallowance of a portion of the claim versus what treatment that claim is entitled to under a confirmed plan. Certainly as an untimely claim, it's not entitled to the same treatment it would have been if it was timely filed, but as to allowance or disallowance, I would say that the claim is an allowed claim at this point. It's been filed untimely. There hasn't been an objection to it, but I don't think it bears directly on the decisions before this Court. We've pretty well eroded your rebuttal time if you haven't. That's all right. I think I'll just conclude. I wanted to highlight in my argument today the In re. Mickels case, and there's a couple of iterations, but I'm referring to the one at 286 Bankruptcy Reporter 684, the decision of the Bankruptcy Appellate Panel in 2002. I think that case is the most on-point decision with respect to both the informal proof of claim doctrine and its application to this case. I think it also addresses, importantly, an objection raised by the U.S. trustee, which is, well, so maybe the bank has an informal proof of claim, but they never provided proof of their security interests, et cetera. I think Mickels disposes of that argument in favor of the bank's position. And I'm running out of time, so unless your honors have any further questions, I thank you for your time. Thank you, sir. Ms. Diaz, have you decided who's going to lead off? Yes, I will start, Your Honor. Thank you. Good morning. Good morning. May it please the Court, good morning. My name is Sarah Diaz. I represent Debtor Adam Schiller, one of the appellees in this case. Appellee Schiller is asking this panel to affirm the decision of the Bankruptcy Court, which confirmed his Chapter 12 plan of reorganization and disallowed the claim, the unsecured claim of the appellant. Essentially, as far as the evidentiary hearing, the debtor provided excruciatingly detailed information about the assets. They were itemized. They were valued. The transcript from the audio of the telephonic hearing shows that Judge Ridgeway discussed the values between the parties and where they were at. And essentially, in that audio, it was discussed many times that it was a minor issue, but also that the parties were very close in valuations. And after several questions about that, the appellants failed to provide a specific allegation of what their claim was and what their unsecured claim was. It was a rough estimate, or it just simply relied on the schedules. Wouldn't that have been a wonderful thing to discuss at an evidentiary hearing at which valuation was determined? I agree. And I believe that the appellant felt that if it was a $50,000 issue, my position would be that it should have been raised to the court that it is a valuation issue that needs to be addressed at an evidentiary hearing. He did not do that. The appellants did not request it. And at that hearing, I, you know, Judge Ridgeway, in good faith, took the status of the parties between the discussions between the parties and relied on that in that conference. At what point during the hearing do you feel it was incumbent upon Mr. Lallier to request an evidentiary hearing? I believe after Judge Ridgeway in the record refers to when he restates what Mr. Lallier stated on the record earlier in that hearing. And he said as far as the differences between the parties, and I believe I cited that in the brief, that he, do you agree, is that a fair statement of what you've stated today? And he specifically said that the differences between the values, the differences in value between the parties. He wasn't talking about the issue being minor. He was referring to the differences in value. And we all know Chapter 12 plans are expensive, and they require a lot of time. And so an evidentiary hearing, when it appears to the court that the values between the parties are relatively minor, would be a waste of resources of the debtor, the creditor, and the court. If the court had taken the bank's number instead of debtors, would you feel the same? Absolutely. I mean, yeah, I would. Now, granted, that would impact the numbers in the plan. But, yes, if the bank had also provided the detail and the itemization instead of relying on the debtor's representations and had its own independent valuation other than the valuation they provided, which was a year and a half old, and it was not detailed as to which assets belonged to the bank, there's a lot of information there that just wasn't as accurate that I felt could have been presented at that time. And, again, that would have been wonderful for a cross-examination of the evaluation expert, which did not take place because there was no evidentiary hearing. Exactly. But I do believe that it could have easily been requested in this case. But because the presentation to the court was that it was a minor difference between the parties, that did not happen. Okay. I would like to discuss just briefly the informal claim document. The only document that was filed within the bar claims period was the seven-page objection filed to a motion to secure credit, which, again, did not provide documentation. It didn't provide promissory notes, exhibits, copies of loan documents. It didn't provide the rate of interest charged. Do you think it identified an unsecured component? I do not believe it did. And the reason I believe that is it was basically a blanket restatement of the promissory notes, the original principal balances, and the estimated balance that was only provided as a reflection of the debtor's schedules. And the reason why the debtor's schedules were so accurate was because I estimated a per diem. And so, essentially, based on an old statement that my debtor had, I did the best we could to estimate what that balance was at the time of filing. And the secured claim was a moving target. It was crops in the ground. We still didn't have yield numbers that were exact at that time. So the $566,000 secured claim was constantly changing throughout the case. And I believe the debtor did an excellent job of showing the court how that changed over the time the case progressed. And I believe we've outlined that very detailed in both the appellee brief and also the brief in support of confirmation that was filed prior to the hearing. But, essentially, In re Michaels was one of the cases that Judge Ridgway relied on, and I believe that in that particular case, in the Michaels case, there was much more involvement. They were involved in a creditor's committee. They were involved in multiple pleadings. There was much more detail provided than this unverified objection to a motion. And, essentially, I don't believe that the bank has represented its the requirements to get an informal claim. And, finally, Your Honors, overall, I believe the court properly concluded that this plan was confirmable, that it met the requirements of 1225, that the unsecured claim of the bank was not allowed due to the lack of filing of the proof of claim in a timely manner, and also that it was not an informal claim. And if you don't have any additional questions, I can reserve to Mr. Giesecke. Thank you. Thank you. Mr. Giesecke. Good morning, Your Honors. Good morning. I'm Michael Giesecke. I'm representing the Chapter 12 trustee, Kyle Carlson. He's the Chapter 12 trustee in the underlying case here today. I can start off. I think a way to look at this is to try to view how Chief Judge Ridgway had to approach this case when a confirmation hearing was upon him, and he was holding that hearing. I think what he saw and probably what his staff saw was a lack of documentation, a lack of information supplied by the creditor bank, contradictory statements about what the amount of the secured claim for the bank was. There's some assertions here today about this $57,000 difference between the debtor's number and the bank's number for the amount of the secured claim, but I'll quote Appellant's counsel, what he told the judge. The secured claim as of the petition date, as reflected in debtor's schedules, which was very, very close, if not right on with what I had from the bank at that point in time, was $566,000. In the pleadings to the bankruptcy court and to this panel, Appellant asserts that the plan provides for payments on account of $563,120.69. This goes back to this $3,400 difference in value that we discussed in our brief. I think the issue here is that there was no hearing requested for evidence to take evidence on that issue. Judge Ridgway heard creditor's counsel stating that this was the amount of the secured claim and that the plan was providing payments on just $3,000 less than that claim. Judge Ridgway was faced with a decision, how do I rule on this? If bank is all over the place, they fail to file a proof of claim, they fail to set forth what they believe the total amount of their secured claim is as of the date of filing or as of the date of confirmation, other than stating that essentially it's $3,000 short or it's $57,000 short. I think Judge Ridgway had discretion at that point. He was within his authority to rule and not send that to an evidentiary hearing to resolve a difference of approximately $3,000 as the bank was still receiving over 99% of its claim. But the informal proof of claim did assert a specific amount, didn't it? It asserted a specific amount, but as I pointed out in my brief and I'll point out here today as well, I question why creditors, counsel and the creditor, would assert on one hand that no proof of claim was filed because no proof of claim was required, this Section 1111A argument. That's the fully secured status. Correct. In addition to the 506B fully secured status. So they made these assertions to the court and then stated that, well, this item that was filed down the road, they tried to assert that this was an informal proof of claim, but in the same breath are asserting that they didn't have to file a proof of claim. So if you're a judge, if Judge Ridgway is sitting there and he has to take this all in, what is he supposed to rely on? Which statement is he supposed to rely on in that circumstance? If appellant truly believed that the pleading was the claim, then why didn't appellant tell the bankruptcy court that that specific pleading was the claim, that they want to move forward with the amounts listed in that claim and rely on that claim instead of asserting that you don't have to, there is no proof of claim, we don't have to rely on a claim, look at the schedules, rely on the schedules. That was in the very early stage of the case, wasn't it? Those assertions were still made at confirmation hearing to the bankruptcy court judge. So I think these contradictory numbers, these contradictory statements about the amount, or excuse me, about what was the proof of claim, was it the amount listed in the schedules, was it this pleading that was unverified, I think that presents issues to the bankruptcy court judge about how do I rule in this situation because he needs to take what he has in front of him. Doesn't that argue in favor of holding an evidentiary hearing? I think if a creditor is asserting to the court that there's a $3,000 difference on a claim based on the statements, I think the judge could rule in that circumstance and say that amount is de minimis, I'm not going to send that to an evidentiary hearing. But didn't the creditor argue that in its objection to the plan? My understanding is the objection to the plan attached an appraisal and everything. Correct. But the appraisal would have been, and I think this was outlined in some of the documents, the amount that was going to be paid was reduced essentially because there was some post-petition liquidation of assets that reduced that secured claim, so they were trying to figure out what that number was that had to be paid as of the date of confirmation on that claim. But again, I think there's probably some frustrations with the bankruptcy court judge over viewing this situation where a creditor simply is admittedly not complying with Section 502 and Federal Rule Bankruptcy Procedure 3002, which require a proof of claim to be filed. So maybe a better way to ask the question is what evidence in the record at the confirmation hearing did the bankruptcy court rely upon to make the 506 valuation determination? I don't think he took any. I'm sorry for interrupting you. I don't think he took any. He didn't take any evidence on that issue, and I think the reason he didn't is  statements before the court. 506 valuation cannot happen without notice and hearing, which hasn't happened yet. He didn't say that, yes. But still, I think the difference in this case was so small, and I think the fact that the... Is there any authority for a de minimis exception to due process? We keep talking about the small amount of the claim, but the fact remains that there was a finding of fact necessarily made without taking evidence. How does that work? I researched that issue, and I never came across any case law that discussed something in that sort of small... First impression. First impression. But, I mean, if you take it to the extreme and the difference is a dollar, $5, is it incumbent upon the bankruptcy court judge to send that to an evidentiary hearing? I don't know the answer to that. I would say it would not be an error in that case. Is it the de minimis nature, or is it holding a hearing? Well, and I think under the Eighth Circuit case law, it says you must hold a hearing, and he held the hearing. And there was no request for an evidentiary hearing when he took oral argument at that stage. Yes, Your Honor. Even the statement I just read to you, where he said 506 valuation cannot happen without notice and hearing, which hasn't happened yet? I'm sorry. Was that in his briefing, or was that in oral statements to the court? I believe it was in the transcript, so oral statements to the court. Well, he may have requested it then. I was under the impression that he did not request it at that time. But I would still point to the very limited nature of the difference in value creditor statements to the court about the differences in value and that they were minor. Well, it might be more minor if the bank's entire unsecured claim weren't being disallowed, because the bank's not going to receive anything on their unsecured claim. So the only way they're going to get paid is through their secured claim, which the bankruptcy court reduced, again, without evidence. It's a difficult aspect of this case, Your Honor. Well, both sides have their difficulties on this one. I think this is your difficulty and counsel's difficulty. Mr. Lawyer has his own difficulties. If the court had found that there was an unsecured component, wouldn't we need a different plan? Yes, Your Honor, and I think that was the frustration with myself and debtor's counsel is that there was no proof of claim filed. So how do you object to a claim when none is filed to say we want to object to the unsecured portion of that claim? It was very difficult, so we came to the conclusion that that needed to be addressed through the plan. Thank you. Thank you, Your Honors. I think we are adjourned.